# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| PHOTOMEDEX, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 09-00896 |
| | : | |
| ST. PAUL FIRE & MARINE INS. CO., | : | |
| Defendant. | : | |
| | : | |

## Memorandum

YOHN, J.                                                                                      July 28, 2009

PhotoMedex, Inc., an insured, brings this action alleging breach of contract and asking for

a declaratory judgment under 28 U.S.C. § 2201 against its insurer St. Paul Fire & Marine

Insurance Co. ("St. Paul").  St. Paul filed a motion to dismiss or, alternatively, to stay both counts

of PhotoMedex's complaint because St. Paul previously filed a declaratory judgment complaint

in a California state court that raises an issue identical to the issue raised in count I of

PhotoMedex's compalint.[1]  In response, PhotoMedex filed a motion for partial summary

judgment pursuant to Federal Rule of Civil Procedure 56, arguing for a declaratory judgment in

PhotoMedex's favor based on the court's prior decision in *PhotoMedex, Inc. v. St. Paul Fire &*

*Marine Ins. Co.* (*PhotoMedex I*), No. 07-0025, 2008 WL 324025 (E.D. Pa. Mar. 20, 2008).  St.

Paul, in turn, responded and asked the court to transfer this action to the Southern District of

California.  For the reasons that follow, I will deny St. Paul's motion to dismiss or stay

---

[1] As discussed below, PhotoMedex has removed the California state filing to the United
States District Court for the Southern District of California.

1

PhotoMedex's declaratory judgment claim and deny its request to transfer, but I will grant the motion to stay PhotoMedex's breach of contract claim.  I will also grant PhotoMedex's motion for partial summary judgment.

## I.        Facts and Procedural Background

The court is familiar with the parties to this action and the issues raised by the pending motions as both parties and many of the same legal issues were before the court in *PhotoMedex I*. As a result, the relevant background facts are largely undisputed.  St. Paul provides casualty insurance.  St. Paul issued PhotoMedex two insurance policies, a primary liability policy and an umbrella policy, both under the policy number TE06401644 (collectively, the "insurance policy").  The insurance policy covered the period of April 15, 2003 through April 15, 2004. Relevant to this case, the liability policy provided commercial general liability coverage to PhotoMedex in a section labeled "Technology Medical and Biotechnology Commercial General Liability."  (Policy, Tech. Med. & Biotech Commercial Gen. Liab. Prot.—Claims-Made ("CGL") 4.)  Under the CGL's "personal injury liability" coverage, St. Paul agreed to "pay amounts any protected person is legally required to pay as damages for covered personal injury that:  results from your business activities; and is caused by a personal injury offense committed while this agreement is in effect."  (*Id.*)  "Personal injury offenses" included "[m]alicious prosecution." (*Id.*)[2]  The umbrella policy applies after the policy limits in the liability policy are exhausted and also defines "personal injury offenses" to include "[m]alicious prosecution."  (Umbrella Policy, Tech. Umbrella Excess Liab. Prot.—Claims-Made 4.)

---

[2] For further discussion concerning the content of the insurance policy, *see PhotoMedex I*, 2008 WL 324025, at **1-3.

On November 4, 2004, PhotoMedex was named a defendant in a malicious prosecution lawsuit ("*RA Medical I*") filed by Dean Stewart Irwin, a former employee, and RA Medical Systems, Inc., Irwin's new employer.[3]  PhotoMedex turned to St. Paul for defense and indemnity in the *RA Medical I* matter pursuant to PhotoMedex's understanding of the terms of the insurance policy.  Although St. Paul agreed to provide a defense, it did so under a full reservation of its rights.  St. Paul also notified PhotoMedex that, under California law, it was not required to indemnify PhotoMedex with regard to the malicious prosecution action and that attorney fee rates were capped by California statute at the rate of $175 for counsel and $100 for paralegals. *See* Cal. Civ. Code § 2860(c).  PhotoMedex disputed both issues.

In early 2007, the parties in *RA Medical I* discussed settlement.  PhotoMedex notified St. Paul of the settlement discussions and sought St. Paul's participation.  Eventually, the parties agreed to settle the malicious prosecution action for $1,200,000 in exchange for dismissal of all claims with prejudice.  St. Paul consented to the settlement under another reservation of its rights.  St. Paul later sought to avoid payment of a large percentage of the settlement figure.  In response, PhotoMedex filed a complaint against St. Paul in the Eastern District of Pennsylvania on January 3, 2007, seeking a declaration as to the scope of coverage St. Paul was obligated to provide and alleging St. Paul materially breached the insurance policy.  Later, the parties filed cross-motions for summary judgment raising two issues: (1) whether St. Paul had a duty to indemnify PhotoMedex for the malicious prosecution action under the personal liability section of the insurance policy; and (2) whether St. Paul had a duty to pay attorney fee rates greater than

---

[3] *RA Medical I* arose in response to a state court lawsuit PhotoMedex filed on April 29, 2003 against Irwin and RA Medical for breach of contract, misappropriation of trade secrets, intentional interference with contractual relations, and unfair competition and conversion.

the amount it actually pays to attorneys in the ordinary course of business in the defense of similar actions.  At the heart of both issues was whether Pennsylvania or California substantive law governed the insurance contract.

On February 6, 2008, following a choice of law analysis under *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220 (3d Cir. 2007), I concluded that: (1) Pennsylvania's substantive law governed the interpretation of the insurance policy; (2) St. Paul was obligated to indemnify PhotoMedex in the malicious prosecution action; and (3) Pennsylvania's "reasonable fee" standard controlled the attorney fee rates that St. Paul must pay under the insurance policy.  Because St. Paul raised genuine issues of material fact as to whether it was in material breach of the insurance policy and as to whether the attorney fees PhotoMedex sought to recover from St. Paul were reasonable under Pennsylvania law, I denied those aspects of PhotoMedex's motion.

Prior to trial in *PhotoMedex I*, the parties settled their dispute and entered into a settlement agreement (the "Settlement Agreement") on March 28, 2008.  Under the terms of the Settlement Agreement, St. Paul agreed to pay to PhotoMedex a portion of the settlement figure and attorney fees from *RA Medical I*.  In exchange, PhotoMedex agreed to release several claims against St. Paul, including claims "related in any way to" the "[u]nderlying action," (Def.'s Mot. Dis. Ex. B, Settlement Agreement, ¶ 2.2.), which is defined as "*Dean Stewart Irwin and RA Medical Systems, Inc. v. PhotoMedex, Inc.*, State of California, San Diego Superior Court Case No. GIC 839208," (*id.* at Recitals ¶ D).  In addition, the Settlement Agreement includes both choice of law and choice of venue provisions, which provide that the:

> Settlement Agreement shall be construed in accordance with the laws of the State of California.  In the event [the] Settlement Agreement must be enforced or interpreted

4

by an arbitrator or a court of law, [St. Paul and PhotoMedex] agree that the action shall take place in the State of California.

(*Id.* ¶ 3.8.)  In the Settlement Agreement, St. Paul did not preserve its right to appeal my decision that Pennsylvania law applied to the interpretation of the insurance policy and that, applying Pennsylvania law, the insurance policy required that St. Paul provide coverage for the malicious prosecution claims in *RA Medical I.*

On October 29, 2008, Irwin and RA Medical Systems, Inc. filed another malicious prosecution action against PhotoMedex in California state court ("*RA Medical II*").[4]  (*See* Pl.'s Mot. Summ. J. Ex. E).  PhotoMedex, through its broker, tendered the *RA Medical II* claim to St. Paul on or about November 21, 2008.  St. Paul responded by letter on January 27, 2009.  (*See* Compl. Ex. E, Letter from Mark D. Peterson to Davis Woodward.)  In the letter, St. Paul asserted that based on the Settlement Agreement it was not required to provide coverage for *RA Medical II* because *RA Medical II* fell within the set of claims that PhotoMedex released in the Settlement Agreement.  (*Id.* at 2-4.)  Despite this assertion, St. Paul concluded the letter by assuring PhotoMedex that the letter did "not constitute a denial of the tender" and by seeking PhotoMedex's "point of view before St. Paul decide[d] how to proceed."  (*Id.* at 5.)  On January 29, 2009, just two days after sending this letter to PhotoMedex, St. Paul filed a state court complaint in California seeking the following declaratory relief: (1) that, under the terms of the Settlement Agreement, "St. Paul is not obligated to defend or to indemnify PhotoMedex in connection with the newly tendered second malicious prosecution action"; and (2) that the scope and performance of the insurance policy are issues governed by California law, and, under

---

[4] *RA Medical II* arises out of a second lawsuit allegedly filed by PhotoMedex in federal court in January 2004 against Irwin and RA Medical for Lanham Act violations.

5

California law, St. Paul has "no duty to indemnify PhotoMedex for liability stemming from the malicious prosecution action." (Def.'s Mot. Dis. Ex. A at 10-11.)  This second issue raised in St. Paul's California state court complaint is the identical choice of law issue I addressed in *PhotoMedex I.*

St. Paul did not immediately serve, or otherwise notify, PhotoMedex of the state court complaint.  PhotoMedex did, however, independently learn of St. Paul's state court filing before being served and, in response, filed this action on March 3, 2009.  On March 6, 2009, Photomedex removed the still-unserved California state action to the United States District Court for the Southern District of California (the "California Action").  St. Paul finally served PhotoMedex with the California state court complaint on March 18, 2009.  On March 19, 2009, in another letter to PhotoMedex, St. Paul stated that it would defend PhotoMedex in *RA Medical II* under a reservation of St. Paul's rights.  (*See* Pl.'s Mot. Summ. J. Ex. H at 2.)

On March 24, 2009, St. Paul filed a motion to dismiss or, in the alternative, to stay this action.  On April 7, 2009, PhotoMedex filed a motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 as to its declaratory judgment claim.  In its response, St. Paul asked the court to transfer this action to the Southern District of California.  The parties have fully briefed each motion.

## II.   St. Paul's Motion to Dismiss or Stay

### A.   Count I: Declaratory Judgment

The Declaratory Judgment Act ("DJA") provides that: "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such

declaration . . . ."  28 U.S.C. § 2201(a) (emphasis added).  Despite the "virtually unflagging

obligation of the federal courts to exercise the jurisdiction given them," *Colo. River Water*

*Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), the discretionary language of the

DJA means federal courts have "no compulsion to exercise [the] jurisdiction" the statute grants,

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).  In other words, the statute

"confers a discretion on the courts rather than an absolute right upon the litigant."  *Wilton v.*

*Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citations and internal quotations omitted).

Consequently, "[i]n the declaratory judgment context, the normal principle that federal courts

should adjudicate claims within their jurisdiction yields to considerations of practicality and wise

judicial administration."  *Id.* at 288.

St. Paul argues that the first filed rule precludes the court from exercising jurisdiction

over PhotoMedex's declaratory judgment claim.  Additionally, St. Paul contends that because the

California action involves the threshold issue of whether the Settlement Agreement precludes

coverage for *RA Medical II*, this court should decline to address the second (and contingently

relevant) issue concerning the underlying insurance policy.  I will address each argument.

### 1.     First Filed Rule

St. Paul argues that because it filed the California action before PhotoMedex filed this

action, the first filed rule mandates that I decline to exercise jurisdiction over PhotoMedex's

declaratory judgment claim.  PhotoMedex concedes that the declaratory judgment actions filed in

Pennsylvania and California constitute parallel proceedings that implicate the first filed rule.

PhotoMedex argues, however, that because St. Paul surreptitiously filed in California in an effort

7

to avoid an unfavorable forum (i.e., the Eastern District of Pennsylvania), the first filed rule does not preclude its action from proceeding.

Under the "first filed" rule, "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it," *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (quotation and alteration omitted), meaning, "where there are parallel proceedings in different federal courts,[5] the first court in which jurisdiction attaches has priority to consider the case," *FMC Corp. v. AMVAC Chem. Co.*, 379 F. Supp. 2d 733, 737 (E.D. Pa. 2005). "The letter and spirit" of this rule are "grounded on equitable principles," *EEOC*, 850 F.2d at 977, of encouraging "sound judicial administration" and "promot[ing] comity among federal courts of equal rank," *id.* at 971. The first filed rule, however, "is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Id.* at 972. Rather, "[d]istrict courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *Id.*

The threshold issue when addressing the first filed rule is whether the proceedings are "truly duplicative," that is, the later-filed case must be "materially on all fours" with the previously filed action to trigger the first filed rule. *Grider v. Keystone Health Plan Cent.*, *Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007) (citation and internal quotations omitted). [T]he "issues

---

[5] The court notes that because PhotoMedex removed the California action to federal court after filing in this district, PhotoMedex's complaint was the first complaint to be filed in a federal court. Notwithstanding this technical point, there are sound policy reasons for using the date of the state court filing rather than the date of removal for purposes of establishing chronology in cases like this. Nevertheless, because I find, on other grounds, that the first filed rule does not preclude this action from proceeding, I need not address this timing issue.

must have such an identity that a determination in one action leaves little or nothing to be determined in the other."  *Id.* (internal quotations omitted); *see also Kedia v. Jamal*, No. 06-6054, 2007 WL 1239202, *3 (D.N.J. Apr. 25, 2007) (finding that "the Third Circuit Court of Appeals has interpreted the first-filed rule narrowly, holding that it only applies to truly duplicative proceedings" (internal quotations omitted)).

Here, the parties raise three issues between the two proceedings: (1) whether, under the terms of the Settlement Agreement, PhotoMedex released insurance coverage claims for *RA Medical II*; (2) whether, assuming PhotoMedex did not release such claims, California or Pennsylvania law applies to the construction and performance of the insurance policy and to the recoupment of attorney fees; and (3) whether, based on the applicable law, St. Paul stands in breach of the insurance policy.  St. Paul raises issues one and two in the California action, and PhotoMedex raises issues two and three in this action.  Issue two is the only issue common to both actions.  While PhotoMedex may raise, as a counterclaim, its breach of contract claim in the California action, because of the forum selection clause in the Settlement Agreement, I am unable to address the threshold issue of whether the Settlement Agreement precludes PhotoMedex's *RA Medical II* claim.  (*See* Def.'s Mot. Dis. Ex. B, Settlement Agreement, ¶ 3.8 ("In the event [the] Settlement Agreement must be enforced or interpreted by an arbitrator or a court of law, [St. Paul and PhotoMedex] agree that the action shall take place in the State of California.").)  Accordingly, the California action will address the legal and factual issues concerning the scope of the Settlement Agreement that I will not.  Therefore, while judgment in the California action may leave me with nothing left to adjudicate, any judgment I issue now concerning the choice of law issue would still leave the Settlement Agreement issue for the

California district court to consider.  *See Grider*, 500 F.3d at 333 n.6 (to implicate first filed rule,

"issues must have such an identity that a determination in one action leaves little or nothing to be

determined in the other" (quotations omitted)).   Because the two proceedings do not involve *all*

of the same legal issues, but rather overlap with respect to *many* of the same issues, I find that the

first filed rule does not apply to this case under the Third Circuit's narrow "truly duplicative"

standard.  *Cf. Freedom Mortgage Corp. v. Irwin Fin. Corp.*, No. 08-146, 2009 WL 763899, *5

(D. Del. Mar. 23, 2009) (finding first filed rule applied where parallel matters involved exact

*same* agreements and *same* facts); *see also Time Warner Cable, Inc. v. GPNE*, 497 F. Supp. 2d

584, 589 (D. Del. 2007) (noting that historically, "the Third Circuit has applied the first-to-file

rule for cases involving the same issues").  Notwithstanding this conclusion, because of the close

relationship between this action and the California action, I will also proceed in this section to

discuss an additional reason for departing from the first filed rule.[6]

---

[6] I continue to the exceptions of the first filed doctrine because while the Third Circuit
has taken a narrow approach to the first filed rule, the precise degree of difference between
proceedings needed to depart from the first filed rule is somewhat of an open question.  For
example, district courts differ on whether a different party alignment, standing alone, is sufficient
to justify departure from the first filed rule.  *Compare Kedia*, 2007 WL 1239202, at *3 (holding
that first filed rule does not apply because "there is no identity of the parties"), *with Freedom
Mortgage*, 2009 WL 763899, at *4 ("Complete identity of the parties and issues, however, is not
required for the 'first-filed' rule to apply.").  And, with respect to duplicative issues, the
situations where district courts depart from the first filed rule are not, unlike this case, arguably
close calls.  *See Academyone v. Collegesouce, Inc.*, No. 08-5707, 2009 WL 792865, *2 (E.D. Pa.
Mar. 23, 2009) (holding that dual proceedings were not truly duplicative where one proceeding
involved California common law and the federal Computer Law and Abuse Act while the other
proceeding involved only Lanham Act claims); *Devorris v. Cummings Inc.*, No. 3:2006-183,
2007 WL 1875816, *6 (W.D. Pa. June 27, 2007) (reasoning that cases involved vastly different
claims and finding it "difficult to fathom" how one party believed the cases to be truly
duplicative).

Even if the court treats these two proceedings as "truly duplicative," the first filed rule does not apply because St. Paul's conduct falls within the exceptions to the rule.  In *EEOC*, the Third Circuit explained that "[b]ad faith . . . and forum shopping have always been regarded as proper bases for departing from the rule."  *EEOC*, 850 F.2d at 976 (holding first filed doctrine inapplicable where timing of the earlier filing "indicate[d] an attempt to preempt an imminent subpoena enforcement action" in another district) (citations omitted).  Courts have rejected application of the rule where the later-filed case was further developed than the first filed suit, *id.* (citing cases), and where "the first-filing party initiated suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum," *id.* at 976 (citing *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 217, 219 (2d Cir. 1978), *abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990)).

The court finds further guidance in a case with similar circumstances, *FMC Corp. v. AMVAC Chem. Co.*, 379 F. Supp. 2d 733 (E.D. Pa. 2005).  In *FMC*, the parties were attempting to resolve a copyright infringement dispute concerning product labeling informally, *id.* at 734-35, but following a decision favorable to FMC in another matter in the Eastern District of Pennsylvania, FMC issued a cease-and-desist letter, giving AMVAC until May 27, 2005 to stop using the product labels at issue.  *Id.* at 735.  In response, on May 26, 2005, AMVAC filed a preemptive lawsuit in the Central District of California.  *Id.*  AMVAC served FMC's registered agent in Delaware, but made no mention of the case to the attorney with whom AMVAC was negotiating a settlement in the matter.  *Id.* at 736.  On June 1, 2005, prior to learning of the California action, FMC filed a civil action in the Eastern District of Pennsylvania, and sent a courtesy copy of the complaint to AMVAC's attorneys on the same day.  *Id.*  Only then did

11

AMVAC send, via email, a copy of the California complaint, in a display of what the *FMC* court labeled "problematic professional one-upmanship." *Id.* at 737. When addressing the first filed rule, the *FMC* court found that AMVAC's behavior could "only be construed as one (or some combination) of . . . inequitable conduct, bad faith, anticipatory filing, forum shopping or avoidance." *Id.* at 742. Thus, the *FMC* court declined to apply the first filed rule. *Id.* at 749.

Here, I find that St. Paul engaged in forum shopping or forum avoidance and procedural gamesmanship to such an extent that I will decline to apply the first filed rule. I turn first to St. Paul's forum shopping. St. Paul filed the California state court action during preliminary discussions with PhotoMedex concerning *RA Medical II*. St. Paul's preemptive filing in California tends to illustrate its desire to avoid the unfavorable ruling St. Paul suffered in *PhotoMedex I*, as it is likely that PhotoMedex would have filed any action in this district (which PhotoMedex did eventually do). *See FMC*, 379 F. Supp. 2d at 747 (stating that court was "constrained to point out that it [was] reasonable to think that because of the significant similarities between FMC's copyright allegations in both" the pending action and a previous case before the same judge, that "AMVAC would try to avoid the result experienced" in the previous case). This procedural gamesmanship is classic forum shopping or forum avoidance, which runs contrary to the equitable goals of the first filed rule. *See EEOC*, 850 F.2d at 978 (holding that the first-filed rule "should not apply when at least one of the filing party's motives is to circumvent local law and preempt an imminent subpoena enforcement action"); *FMC*, 379 F. Supp. 2d at 743 ("A decision to file an action in another judicial district because the filing party believes the other district provides some benefit . . . is considered either forum shopping or forum avoidance and is sometimes frowned upon for reasons of equity.").

12

Moreover, I find that St. Paul's forum shopping came in anticipation of litigation with PhotoMedex. *See EEOC*, 850 F.2d at 977 (reasoning that party's "attempt to preempt" imminent legal action weighed against application of first filed rule). Admittedly, unlike *EEOC* and *FMC*, however, there was not a concrete day after which PhotoMedex would file a lawsuit against St. Paul. *See also Keating Fibre Int'l v. Weyerhaeuser Co.*, 416 F. Supp. 2d 1048, 1051 (E.D. Pa. 2006) (finding no evidence of bad faith where parties engaged in settlement negotiation, but established no deadline for filing a civil action). Nevertheless, while PhotoMedex had not established a deadline to settle the matter prior to its filing a civil action, having recently settled *PhotoMedex I*, St. Paul certainly was aware of the potential for a lawsuit, especially when considering the content of its January 27, 2009 letter. Though the letter does not formally deny PhotoMedex's tender, it does include four pages of legal argument concerning the scope of the Settlement Agreement and it concludes that the Settlement Agreement prevents PhotoMedex's claims. It is quite reasonable to believe that, knowing the content of the letter, St. Paul anticipated a speedy and adversarial response by PhotoMedex. Moreover, by filing its complaint just two days after sending this letter, St. Paul assured itself that its filing would come prior to PhotoMedex's receipt of the letter and offering of the input requested in the letter, and prior to any civil action PhotoMedex might have filed upon receipt of St. Paul's letter. The temporal proximity of these actions further demonstrates that St. Paul anticipated imminent litigation, as did the defendant in *FMC*.

Lastly, I find that St. Paul's behavior, both before and after filing in California, weighs against applying the first filed rule. St. Paul defends it actions by asserting that filing the California action when it did protected its interests. St. Paul's argument is not without merit. It

is no secret that when parties negotiate settlement agreements, the parties simultaneously prepare for litigation in the event the negotiations break down.  In fact, in certain circumstances, the parties may even need to file lawsuits during the course of negotiations to protect their interests, but still hope to settle their differences without the costs of full blown civil litigation.  Here, however, St. Paul's letter was aimed at opening the lines of communication with PhotoMedex. The letter does not mention St. Paul's intention to file a protective lawsuit; to the contrary, the letter specifically asks for PhotoMedex's input on how the parties should proceed.  If St. Paul truly aimed to protect its interests while still maintaining open settlement dialogue, it could have inserted language to that effect in the letter or in a conversation with PhotoMedex's attorneys. Further, even after filing the California action, St. Paul did not serve, or otherwise notify, PhotoMedex attorneys of the California filing.  This procedural gamesmanship is unnecessary behavior, and it mitigates against applying the first filed rule.  *See FMC*, 379 F. Supp. 2d at 742 (considering the manner in which AMVAC informed FMC of AMVAC's previous court filing as relevant to its decision to depart from the first filed rule).

In sum, while the court harbors concerns regarding notions of judicial economy and federal comity due to the potential for duplicative litigation, I find that St. Paul's forum shopping, procedural gamesmanship, and attempts to conceal its state court filing satisfy the exceptions to the first filed rule as set forth in *EEOC*.  Therefore, even if I were to treat the dual proceedings as "truly duplicative," I conclude that because St. Paul's conduct falls within an exception to the first filed rule, the rule does not provide a basis to dismiss or stay PhotoMedex's declaratory judgment claim.

14

### 2. Additional Considerations under the DJA

Although the first filed rule does not preclude the court's exercise of jurisdiction, I must consider other factors that affect my discretion here.  *See Wilton*, 515 U.S. at 288; *see also FMC*, 379 F. Supp 2d at 746 (analyzing practicality and conservation of judicial resources).  Even upon weighing "considerations of practicality and wise judicial administration," *Wilton*, 515 U.S. at 288, I find that exercising jurisdiction in this case is proper.[7]

Several considerations militate against the exercise of jurisdiction in this case. Importantly, despite the fact that the first filed rule does not preclude the court from proceeding, the court is concerned with the potential for duplicative proceedings and interference with the California action.  *See Colo. River*, 424 U.S. at 817 (articulating need to avoid duplicative litigation).  While these concerns implicate serious issues of federal comity, the concerns are mitigated, as discussed above, by the fact that St. Paul precipitated the problem. Thus, under these circumstances, I find that such concerns do not control my determination of whether to exercise jurisdiction.  The court also is concerned with the potential that any declaratory judgment issued may linger without effect pending the California court's decision with respect to the scope of the Settlement Agreement.  While a declaratory judgment would

---

[7] The Third Circuit, has enumerated several factors to consider when addressing parallel state and federal proceedings: "(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies."  *United States v. Com. of Pa. Dept. of Environ. Res.*, 923 F.2d 1071 (3d Cir. 1991).  In addition, the Third Circuit has emphasized the need to avoid duplicative litigation.  *State Auto Ins. Co. v. Summy*, 234 F.3d 131 (3d Cir. 2000); *see also Colo. River*, 424 U.S. at 817 (reminding that "[a]s between federal district courts . . . the general principle is to avoid duplicative litigation").  Though this case involves parallel federal proceedings, the court still uses these factors for guidance when considering whether to exercise its jurisdiction under the DJA.

resolve the underlying issue that gives rise to *this* action, if the California district court concludes

that PhotoMedex released the *RA Medical II* claim, the declaratory judgment will have no

impact.  The court is hesitant to issue declaratory judgments in such a situation.  *See Aluminum*

*Co. of Am. v. Beazer E., Inc.*, 124 F.3d 551, 560 (3d Cir. 1997) (instructing courts to decline

jurisdiction if declaratory judgment would serve "no useful purpose").

The above considerations, however, do not outweigh the several additional factors that

weigh in favor of exercising jurisdiction.  First, I have already addressed the precise choice of

law issue presented in this declaratory judgment action.  *See FMC*, 379 F. Supp. 2d at 746

(finding that previous handling of "nearly factually indistinguishable" case favored accepting

jurisdiction).  The choice of law issue in *PhotoMedex I* required a detailed analysis causing the

court to expend valuable judicial resources.  *Cf. id.* (noting that because copyright infringement

claims are fact intensive, court would conserve judicial resources by accepting jurisdiction);

*Optical Recording Corp. v. Capital-EMI Music Inc.*, 803 F. Supp. 971, 973-74 (D. Del. 1992)

(stating that patent suits are complicated and reasoning that court's recent work in similar case

familiarized it with the technology and patents at issue, and, therefore, rejecting first filed rule).

The identical choice of law issue, the same parties, and the same insurance policy are at issue

here.  To decline jurisdiction would require the California district court to invest anew those

same resources into an already resolved issue.  More efficient use of judicial resources strongly

favors my exercise of jurisdiction on this issue.  Additionally, having already addressed these

issues, this court has progressed much further than the California district court.  This reality is

evidenced by the fact that PhotoMedex has already presented the choice of law issue to this court

in a motion for summary judgment, placing the court in a position to rule on the choice of law issue immediately.

Overall, though I harbor concerns about exercising jurisdiction, the circumstances of this case—including St. Paul's own actions, the court's familiarity with the issues, and the quick progression of this action—outweigh these concerns. Accordingly, I will deny St. Paul's motion to dismiss or stay this action as to PhotoMedex's declaratory judgment claim.

### B. Count II: Breach of Contract

In count II, PhotoMedex asserts a breach of contract claim against St. Paul. Whether this claim is available to PhotoMedex, however, is contingent on the California district court's determination as to the scope of the Settlement Agreement. Because of this contingency, the court will grant St. Paul's motion to stay the breach of contract claim.

### III. Transfer of the Remaining Claim

In the alternative, St. Paul asks the court to transfer this action to the Southern District of California. PhotoMedex challenges the propriety of St. Paul's request, as St. Paul raised its request not in a motion, but rather in its response to PhotoMedex's motion for partial summary judgment. *See* Local R. 7.1 (setting forth rules for motion practice in this district). The technical deficiencies of St. Paul's transfer request did not affect PhotoMedex's opportunity to respond, however, as St. Paul's briefing clearly laid out what St. Paul sought and its reasons for the request. Moreover, the court is well within its power to transfer the case without such a motion. *See Keating Fibre*, 416 F. Supp 2d at 1051. Thus, I will entertain the issue.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

17

might have been brought."  The decision to grant a motion for a change of venue lies within the discretion of the district court, but "the plaintiff's choice of venue should not be lightly disturbed."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  The Third Circuit has enumerated several public and private factors for district courts to consider when determining whether to grant a motion for a transfer of venue.  *Jumara*, 55 F.3d at 879 (noting that public factors include practical considerations that could make the trial easy, expeditious, or inexpensive).  Upon consideration of these factors and based primarily on the expeditious judicial administration of this case, the court finds that transfer to the Southern District of California is inappropriate.[8]  Accordingly, I will deny St. Paul's transfer request.[9]

## IV.    PhotoMedex's Motion for Partial Summary Judgment

PhotoMedex asks the court for a declaratory judgment that Pennsylvania law governs the interpretation of the insurance policy at issue in this action and that, under Pennsylvania law, St. Paul is required: (1) to indemnify PhotoMedex for malicious prosecution actions and (2) to pay PhotoMedex reasonable attorney fees for the work of independent counsel.  St. Paul does not present an argument with respect to these issues, relying instead on the same arguments proffered

---

[8] Of those factors listed in *Jumara* that are relevant to this situation, all favor the exercise of jurisdiction.  Specifically, the *Jumara* court instructed district courts to consider the plaintiff's choice of forum (a private factor) and the court's familiarity with the forum state's law (a public factor).  Here, PhotoMedex, as the plaintiff, chose this forum, and the court is quite familiar with the application of Pennsylvania law.

[9] St. Paul's repeated reliance in its briefing on the forum selection clause in the Settlement Agreement is unavailing, as the claims raised in PhotoMedex's complaint fall outside of its scope.  Rather than implicate the enforcement or interpretation of the Settlement Agreement, issues to which the forum selection clause applies, PhotoMedex's complaint concerns the underlying insurance policy.

in its motion to dismiss.  For the reasons that follow, I agree with PhotoMedex and will grant its

motion for partial summary judgment accordingly.

A.      **Choice of Law**

The Pennsylvania Supreme Court has adopted a "flexible rule" for choice of law

questions, "which permits analysis of the policies and interests underlying the particular issue

before the court."  *Griffith v. United Airlines, Inc.*, 203 A.2d 796, 805 (Pa. 1964); *see also, e.g.*,

*Budtel Assocs., LP v. Cont'l Cas. Co.*, 915 A.2d 640, 643-44 (Pa. Super. Ct. 2006).  This

approach "gives to the place having the most interest in the problem paramount control over the

legal issues arising out of a particular factual context and thereby allows the forum to apply the

policy of the jurisdiction most intimately concerned with the outcome of the particular

litigation."  *Griffith*, 203 A.2d at 806 (internal quotation marks and alterations omitted).  The

*Griffith* "interest/contacts" approach applies to insurance contract disputes.  *Hammersmith v. TIG

Ins. Co.*, 480 F.3d 220, 227-28 (3d Cir. 2007).

The first step of the interest/contacts analysis requires a determination of whether an

"actual or real" conflict exists between the substantive laws of the involved jurisdictions.  *Id.* at

230.  If an actual conflict exists, I will "examine the governmental policies underlying each law,

and classify the conflict as 'true,' 'false,' or an unprovided-for situation."[10]  *Id.*  Only if I find a

true conflict must I "determine which state has the 'greater interest in the application of its law.'"

*Id.* at 231 (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)).  If I must determine

which state harbors the greater interest, I will consider "both the [Conflict of Laws] Restatement

---

[10] "An unprovided for case is one in which neither state's interests would be impaired if
its laws were not applied."  *Id.* at 230.

II (contacts establishing significant relationships) and 'interests analysis' (qualitative appraisal of the relevant state policies with respect to the controversy)." *Id.* (internal quotation omitted.) This analysis is not a "'mere counting of contacts'"; rather, I must weigh the relevant contacts "on a qualitative rather than quantitative scale." *Id.* (quoting *Cipolla*, 267 A.2d at 856). Because this case is materially indistinguishable from *PhotoMedex I* on the choice of law issue, the court will adopt its reasoning from *PhotoMedex I* and grant PhotoMedex's motion for partial summary judgment. Though the court need not rehearse its entire *Hammersmith* analysis, the court will review briefly its *PhotoMedex I* ruling.

First, the court must assess whether there exists an actual and true conflict between Pennsylvania and California law concerning indemnification and attorney fees. With respect to agreements to indemnify, Pennsylvania law permits an insurer to indemnify against the wilful acts of an insured whereas California law precludes such coverage. *See Downey Venture v. LMI Insurance Co.*, 78 Cal. Rptr. 2d 142, 156-59 (Cal. Ct. App. 1998). Consequently, an actual conflict exists between California law and Pennsylvania law. I find that this conflict is a true conflict because each state's interests—California's interest in discouraging wilful torts and Pennsylvania's interest in permitting parties the right to make and enter their own contracts—will be impaired by the application of the other state's law. More specifically, in applying each state's laws to the express agreement that St. Paul was to indemnify PhotoMedex for malicious prosecution actions, California law will nullify the express agreement whereas Pennsylvania law would not. Such divergent results clearly impair whichever state's law is not applied to this case, prompting a true conflict. An actual conflict with respect to attorney fees also exists. Under Pennsylvania law, an insurer is required to pay reasonable attorney fees and costs of independent

20

counsel.  *Rector v. Am. Nat'l Fire Ins. Co.*, No. 00-2806, 2002 WL 59333, *10 (E.D. Pa. Jan. 14, 2002).  By contrast, the California statute limits the attorney fees to the amount actually paid by the insurer in the ordinary course of business for similar actions.  *See* Cal. Civ. Code § 2860(c).[11] The state's laws conflict because California law is aimed at protecting an insurer from excess expense when paying an insured's independent counsel while Pennsylvania law is intended to place the insured in the same position it otherwise would have been had the insurer selected reasonably priced counsel for malicious prosecution cases.  Because the amount of recoverable attorney fees differs depending on which states' law applies, I find that state's interests are at odds and, therefore, a true conflict exists.

Next, the court must determine "which state has the greater interest in the application of its law," *Hammersmith*, 480 F.3d at 231 (internal quotation omitted), by weighing, on a qualitative scale, the states' interests in the application of their respective law and the states' contacts with the contract for insurance.  Section 193 of the Restatement (Second) of Conflicts of Laws specifically governs casualty insurance contracts.  Under § 193, the validity of a casualty insurance contract is determined by the "local law of the state which the parties understood was to be the principal location of the insured risk."  As I explained at length in *PhotoMedex I*, because the insured risk (that is, the risk of defending and indemnifying PhotoMedex in a malicious prosecution action) can not be localized in a particular state, § 193 is inapplicable.  *See* 2008 WL 324025, at **12-14.  Where § 193 is inapplicable, the court turns to Section 188(2) in

---

[11] Section 2860(c) states that:
The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended.

the Restatement (Second) of Conflicts of Laws.  Under § 188(2), the relevant contacts to consider

include, but are not limited to: (1) the place of contracting, (2) the place of negotiation of the

contract, (3) the place of performance, (4) the location of the subject matter of the contract, and

(5) the domicile, residence, nationality, place of incorporation and place of business of the

parties.  The first two factors favor application of Pennsylvania law as the insurance policy was

negotiated, written, produced, delivered, and signed in Pennsylvania.  The third factor also favors

Pennsylvania law as PhotoMedex pays its premiums through a company based in Philadelphia,

Pennsylvania.  The fifth factor also leans toward application of Pennsylvania law because

PhotoMedex has its headquarters and principal place of business in Pennsylvania.  This factor

carries more weight when considered in connection with the first three factors, which all

independently favor application of Pennsylvania law.  *Id.* cmt. e (stating that significance of fifth

factor "depends largely upon the issue involved and upon the extent to which [it] is grouped with

other contacts").[12]  In addition, the factors favoring application of Pennsylvania law are

especially relevant when weighed under the general policy considerations of Section 6 of the

Restatement (Second) of Conflicts of Laws.[13]  Overall, the significant contacts surrounding the

insurance policy are centered in Pennsylvania.

---

[12]  The location of the subject matter of the contract under contact four is neutral.  This contact refers to the location of the insured risk.  *See Hammersmith*, 480 F.3d at 234.  As I have previously concluded, the "insured risk in this case is spread throughout numerous states and countries.  Therefore, this factor is neutral."  *See id.*

[13] Section 6 lists the policies that are helpful in determining the importance of any given contact:  (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of result; and (g) ease in the determination and application of the law to be applied.

22

Likewise, Pennsylvania has greater governmental interests in the application of its substantive law to this case. While both states, as discussed above, have strong interests in the application of their laws, California's interests bear greater connection to regulation of the underlying tort, while Pennsylvania's are directed to the interpretation of the underlying insurance agreement. Of these two interests, this case involves interpretation of the underlying insurance contracts, which implicates Pennsylvania's interests and naturally favors applying Pennsylvania law. Add to this Pennsylvania's qualitatively stronger contacts and the court concludes that Pennsylvania has a stronger governmental interest in applying its substantive law to the interpretation of the insurance policy.

In sum, this case involves a true conflict between Pennsylvania law and California law with respect to both St. Paul's duty to indemnify and the amount of attorney fees for which St. Paul is responsible. Based on the *Hammersmith* analysis, the court concludes that Pennsylvania enjoys more significant contacts with the insurance policy and that Pennsylvania harbors a greater governmental interest in the application of its law to this matter. Accordingly, the court finds that Pennsylvania law applies. Having so concluded, the court will now apply Pennsylvania law to determine the scope of St. Paul's obligations under the insurance policy.

**B.      Standard of Review**

A motion for summary judgment will be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing

that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party has met its initial burden, the nonmoving party must present concrete evidence supporting each essential element of its claim, *Celotex*, 477 U.S. at 322-23, that is, the nonmoving party must present "'specific facts showing that there is a genuine issue for trial,'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "Facts that could alter the outcome are 'material', and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Lebatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996) (quoting *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995)). In doing so, the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence" for elements on which he bears the burden of production, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), and may not rely merely on bare assertions, conclusory allegations, or suspicions, *see Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

When a court evaluates a motion for summary judgment, "[t]he evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255. Furthermore, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Id.* "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the

facts are undisputed." *Ideal Dairy Farms*, 90 F.3d at 744 (quotation marks and citations

omitted). However, "an inference based upon a speculation or conjecture does not create a

material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied

Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

      **C.**    **Interpretation of the Insurance Policy**

            **1.**    **Indemnification**

Under Pennsylvania law, "[w]hen the language of an insurance contract is clear and

unambiguous, a court is required to enforce that language." *Med. Protective Co. v. Watkins*, 198

F.3d 100, 103 (3d Cir. 1999) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469

A.2d 563, 566 (Pa. 1983)). In this case, the insurance policy expressly indemnifies PhotoMedex

for "personal injury liability" that "results from [its] business activities" caused by "a personal

injury offense," including "malicious prosecution." (Policy, CGL 4.) This express language,

which, under Pennsylvania law, governs the interpretation of the insurance policy, clearly

establishes that St. Paul agreed to indemnify PhotoMedex from losses arising from malicious

prosecution lawsuits. Therefore, relying on the express terms of the insurance policy and having

found no genuine issues of material fact concerning the indemnification issue, the court will

grant PhotoMedex's motion for partial summary judgment and issue a declaratory judgment that,

under the terms of the insurance policy, St. Paul is required to indemnify PhotoMedex from

losses sustained in malicious prosecution actions.[14]

---

     [14] The court offers no opinion as to the threshold issue of whether the Settlement
Agreement precludes PhotoMedex's *RA Medical II* claims.

## 2.     Attorney Fees and Costs

In Pennsylvania, "[i]t is settled law that where conflicts of interest between an insurer and its insured arise, such that a question as to the loyalty of the insurer's counsel to that insured is raised, the insured is entitled to select its counsel, whose reasonable fee is to be paid by the insurer." *Rector,* 2002 WL 59333, at *10 (internal quotation marks omitted) (quoting *Krueger Assoc., Inc. v. ADT Sec. Sys., Mid-South, Inc.*, No. 93-1040, 1994 WL 709380, at *5 (E.D. Pa. Dec. 20, 1994)). PhotoMedex seeks a declaration that this standard applies to attorney fee recoupment under the insurance policy. Having found that Pennsylvania law indeed does apply to the recovery of attorney fees under the insurance policy, PhotoMedex is entitled to the requested declaratory judgment. Accordingly, the court will grant PhotoMedex partial summary judgment and issue a declaratory judgment that Pennsylvania law controls the attorney fee rates that St. Paul must pay under the insurance policy.[15]

## V.     Conclusion

Though this action was filed subsequent to the California action, due to St. Paul's conduct and the lack of uniformity of the issues involved in both cases, the first filed rule does not preclude the court from exercising jurisdiction over this action. Moreover, considerations of wise judicial administration favor the exercise of jurisdiction over Photomedex's declaratory judgment claim. As a result, I will deny St. Paul's motion to dismiss or stay as to PhotoMedex's declaratory judgment action. I will, however, stay PhotoMedex's breach of contract claim

---

[15] As with indemnification, the court offers no opinion as to the threshold issue of whether the Settlement Agreement precludes PhotoMedex's *RA Medical II* claims, including the right to recoup attorney fees.

pending the outcome of the California district court's determination with respect to the scope of the Settlement Agreement.

In addition, I find that Pennsylvania substantive law applies to the interpretation of the insurance policy.  As a result, I will grant PhotoMedex's motion for partial summary judgment on two limited issues: (1) St. Paul is required under the insurance policy to defend and indemnify PhotoMedex from malicious prosecution cases not otherwise precluded by additional agreements; and (2) St. Paul is required under the insurance policy to pay PhotoMedex attorney fees incurred in defending a malicious prosecution lawsuit to the extent required under Pennsylvania law, absent contrary contractual agreements.